Opinion by
Henderson, J.,
The plaintiff’s action is for damages for the wrongful diversion of water from a public highway onto his land by the supervisors of the township. His allegation is that a ditch was cut along the side of the road through an elevation of the ground, thirty years ago or more, by means of which the surface water accumulating on the road and adjacent land Was carried down the road and away from the plaintiff’s land; that this ditch was closed in August, 1905, by the supervisors, the result of which was that the surface water was diverted into his field. The plaintiff admits that the natural drainage of the road was onto his land before the ditch was made"and that with the ditch closed the water would naturally drain onto his land at the point where the supervisors turned it. It further appears that while the ditch was open, when a heavy rain occurred a large quantity of water flowed from the road in that direction; that a ditch was washed out by the water in the plaintiff’s field and that he made an obstruction of stumps and earth to stop this flow. A natural ridge or elevation in the highway was the cause of the drainage of the road onto the plaintiff. This *531 natural flow of the water was changed in part when the ditch was cut through the elevation. The plaintiff’s position, as we understand it, is that the township maintained a ditch along the highway for thirty years and over, and as a legal consequence it cannot now be obstructed or changed by the supervisors. It is not clear whether he claims a prescriptive right to have the water flow along the highway or whether some application of the doctrine of estoppel is supposed to work the same result. It is not expressly asserted that either of these views is that relied upon. The position really taken is that, the supervisors having once opened the ditch through the elevation and having permitted it to remain for thirty years and over, it is the same as a natural water course and the plaintiff can maintain an action for damages resulting from its obstruction. We need not discuss the question whether as against the public the plaintiff could acquire such a right, for the testimony which he presented shows that for a number of years in the period stated the water from the road flowed onto his land through ditches opened and maintained by supervisors; that these ditches were changed at different times to suit the plaintiff’s convenience and that the water did not flow continuously along the highway. It also appeared that the plaintiff obstructed the flow of water onto his own fields and turned it onto the highway. It cannot be successfully contended under the evidence that the drain was open continuously even for twenty-one years. The public roads of a township are subject to the control of the supervisors. This authority is expressly given in the general road law of June 13, 1836, P. L. 551. They are required to keep the roads in good condition and clear of all impediments to easy and convenient travel. The thirty-second section of that act invests them with power and authority to enter on any lands along which a public road is located and cut open, maintain and repair all such drains and ditches through the same as they shall judge necessary to carry the water from the road. The sixty-seventh section provides a penalty to be imposed upon any person who shall fill up or injure any drain or ditch made by any supervisor for the purpose of draining the water from any public *532 road. The performance of the duties imposed upon the supervisors necessarily involves the exercise of official discretion. They are chosen with reference to their intelligence and experience and are presumed to be at least as well qualified as any other electors of the district to direct the construction and maintenance of roads. For the consequences of the honest exercise of this discretion the township is not liable. A municipality is not responsible for a mistake of judgment even, made by a public officer in the discharge of his duty if such mistake be an honest one: Collins v. Philadelphia, 93 Pa. 272; Bear v. Allentown, 148 Pa. 80; Herr v. Altoona, 31 Pa. Superior Ct. 375. Such discretion was exercised by the supervisors of the defendant township in performing the act of which the plaintiff complains. At least there is no evidence on the record from which it could be inferred that they did not act conscientiously and with the object of promoting the public interests which they represented. Whether the surface water should have been permitted to flow through the cut in the bank and down the hill to the spring run or should be turned onto the plaintiff’s land is a question which the supervisors had a right to determine and we must presume that their action was prompted by good motives. It does not follow that the water must be permitted to flow to the spring run because a preceding board of supervisors had caused it so to do. It is well known that the condition of a road changes from year to year and that circumstances arise which make it advisable to change the construction from time to time. The judgment of different boards of supervisors varies also and that which may seem to one to be the most satisfactory arrangement may not have the same aspect to another. The law assumes that each board acts honestly and in the exercise of good judgment until it is made to appear by sufficient evidence that their conduct is malicious or an abuse of discretion. It may be inconvenient to the plaintiff to bear the burden caused by the flow of water onto his land, but of this he cannot complain as his field is the natural outlet for the water flowing down the road and from the adjacent land. The dip or depression permitted the water to flow in his direction and he cannot insist that an artificial *533 channel made by a former supervisor shall continue to be the means by which the water on the road is taken care of. Enough was developed in the plaintiff’s evidence to show that the supervisors may have acted with propriety in taking care of the water in order that the least damage should be done by it. The plaintiff never acquired a right to use the road as a conduit -to carry the water from his premises. “Roads are made for the convenience of travel, and in no sense to relieve land bordering upon them from the burdens to which they are naturally subservient.” Martin v. Riddle, 26 Pa. 415. The nonsuit was rightly granted.
The judgment is affirmed.