# De Noble *v.* Wilkins Township, Appellant.

*Road law—Construction of road—Diversion of water—Injuries to land.*

Where supervisors in the exercise of their reasonable discretion, for the purpose of maintaining a road, construct side ditches in order to carry off the surface water falling upon and on to the road, a landowner whose property was subjected to a natural servitude of drainage from the road, and from land above the road, cannot recover damages because water flowed extensively on his premises in flood times.

Argued April 29, 1920. Appeal, No. 94, April T., 1920, by defendant, from judgment of C. P. Allegheny County, July T., 1917, No. 2061, in case of Michael De Noble v. Wilkins Township. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Trespass for injuries to land. Before STONE, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $250 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was in refusing defendant's motion for judgment non obstante veredicto.

*Ralph J. Brown,* for appellant.

No appearance and no printed brief for appellee.

OPINION BY HENDERSON, J., July 14, 1920:

The negligence attributed to the defendant was the omission to clean out the ditches in a public highway known as Harrison road, as a consequence of which, water from the highway flowed onto the plaintiff's premises, producing injury to two dwelling houses located near-by, and washing a gully in the lot. The road referred to is located on a steep hillside with a downward course in the vicinity of the plaintiff's property, and immediately in front of the buildings is a shelf of shale rocks which breaks away abruptly into a ravine. The plaintiff's houses are on the west side of the road; one of them a frame building at the edge of the road, the first floor being two or three feet below the level of the road. The other building constructed of brick is located about thirty-two feet west of the road and about eighteen feet below the road grade. About 700 feet northwardly of the plaintiff's lot the road connects with a highway called Patterson street which is located on the same watershed, and some of the water flowing on Patterson street is discharged into Harrison road. Nearly all of the water flowing in Harrison road is carried in the ditch on the west side. About seventy feet up the road there is a breaker which diverts the water from the east to the west side, and a similar breaker near Patterson street. The hill on the east side of the street in the vicinity of the plaintiff's premises is precipitous and the watershed narrow. The natural flow of rain water on the hillside is westwardly. There are no natural watercourses on the slope except that at the bottom of the ravine in the rear of the plaintiff's lot. The ditch on

the west side falls away in a descent over shale rock immediately after the frame house is passed and thence water flows through a small gully in the plaintiff's lot down to the bottom of the ravine.  The injury complained of was the flow of water from the street against or into the first story and foundation of the frame house and onto the porch and into the cellar of the brick house, and the creation of a small ravine by the action of the water.  The only witness testifying to the actual cause of the injury was the plaintiff and his testimony bears rather on the fact that a large quantity of water came onto his premises on two occasions when there were unusual rains than on the negligence charged in the statement of claim.  It may be inferred from his evidence that some of the water came from the hillside on the east side of the road, and if there had been an adequate ditch along that side that much of the cause would have been prevented, but there is an entire absence of testimony to show what contribution that part of the hill made to the total volume of water, and there is no basis for an assumption by the jury that the presence of a ditch on that side would have prevented the injury.  There is no controversy as to the fact that a very large proportion of the water flowing along the road came down in the ditch on the west side, and there is evidence uncontradicted and corroborated in a degree by the photographic exhibits that approximately 97 per cent of the drainage comes down on that side of the road.  The water diverted from the east side by the two breakers is a negligible quantity therefore and could not have considerably augmented the flow along the road.  No witness testified that the ditch along the west side was not adequate under other than exceptional conditions.  The plaintiff did not undertake to show where the water flowed before the frame house was built which according to the testimony had been standing for about forty-seven years, but the evidence for the defendant was clear that it flowed past that building as it does now and that the

ditch was constructed by some persons living in the neighborhood many years ago. The evidence shows quite conclusively that the water followed a natural course in flowing onto the plaintiff's lot. It does not appear that there are any depressions further up the hill into which it would naturally flow and no plan was suggested by the evidence which might be properly adopted to dispose of it in such a way that it would not flow down the hillside to the bottom of the ravine. The breakers are shown to have been in the road for at least thirty years—they were doubtless put there because of the proximity of the road to the bank on the east side, and there is nothing in the testimony impeaching the judgment of the township authorities in permitting them to remain. The plaintiff's trouble seems to arise out of the fact that long after the road was built he bought the property situated as it is on a declivity below the road. He complains that water flows through the cellar of his frame house, and his principal injury is alleged to be there. It would be remarkable if water did not percolate through the soil and stone there existing, but we are not informed on what legal theory the township could be expected to arrest such seepage. The authority of the supervisors to maintain the road and to adopt such a plan as in their judgment is best adapted to the circumstances is unquestioned. The building of the highway in that location necessarily involved the construction of ditches. The size and form of them was a matter for the sound discretion of the road officials. The plaintiff assumed the burden of showing some abuse of this discretion, but this burden was not discharged. The mere fact that water flowed over his premises when the floods were strong forms no basis for an action. There is persuasive evidence that the water flowed onto his lot naturally long before he owned the property, and before the houses were built. If so, he took the property with notice of the natural servitude to which it was subject. The rights and duties of township authorities with refer-

ence to the drainage of highways and diversion of water therefrom are considered in Hall v. Rine, 60 Pa. Superior Ct. 401, and in Lorah v. Amity Township, 35 Pa. Superior Ct. 529.   The application of the law there set forth to the fact here disclosed leads us to the conclusion that the plaintiff has failed to make out a cause of action.   The defendant was therefore entitled to the instructions set forth in the first assignment of error and to a judgment non obstante veredicto.

The judgment is reversed and the record remitted with direction to the court below to enter judgment for the defendant.